# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

HARRY BAILEY by his
Next Friend Ronda Bailey,

    Petitioner,  : Case No. 3:16-cv-025

 - vs -       District Judge Walter Herbert Rice
           Magistrate Judge Michael R. Merz

THOMAS SCHWEITZER, Warden,
Lebanon Correctional Institution,
           :
    Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Ronda Bailey, as next friend of her brother Harry Bailey, filed the Petition in this case with his approval (ECF No. 1). The Court ordered Warden Schweitzer to file an answer and the state court record which the Warden has done (ECF No. 15, 16). The Court also set a date for Petitioner to file a reply or traverse to the answer of twenty-one days after the Answer was filed (Order, ECF No. 6, PageID 53). That time has expired and no reply has been filed. Therefore the case is ripe for decision.

Bailey pleads the following grounds for relief:

> **GROUND ONE:** The trial court erred as a matter of law by allowing hearsay evidence to be admitted in violation of appellant's right to fair and impartial trial.
>
> **GROUND TWO:** The trial court erred as a matter of law by permitting the prosecutor to make improper remarks to the jury and to introduce improper evidence.

1

[A] The prosecutor made statements about appellant Harry Bailey's DNA was on the victim's scarf (sic). This statement is false and should have been objected to by defense counsel.

[B] The prosecutor allowed a piece of duct (sic) to be entered into evidence that was not found at the crime scene but was found inside a neighbor's apartment 7 days after the crime.

**GROUND THREE:** Prosecutor misconduct.

[A] The prosecutor Leah Dinkalacker allowed the defendant Harry Bailey to be indicted for a knife and there was no knife present or entered as evidence at the trial.

[B] The prosecutor asked the victim to identify the defendant or if she could see Harry Bailey in the courtroom and when the victim answered "No," the prosecutor asked the victim if Harry Bailey could be sitting at the table in the front of the courtroom. That is leading the witness especially after the witness had already given her answer. The prosecutor allowed the victim to identify the defendant in a picture taken from his driver's license in the courtroom as opposed to the victim pointing the defendant out in the courtroom.

**GROUND FOUR:** Misconduct by defense counsel.

[A] Arica Underwood the trial attorney for the defendant never sought out any DNA evidence that could have been gathered from the crime scene including blood from the scarf, blood on the items in the apartment or the knife. Arica Underwood never questioned the procedure used to process the crime scene or why the victim's family were allowed to enter the crime scene on multiple occasions.

[B]  Arica Underwood never questioned the victim's wounds after Officer Johnson's statement that he didn't think the wounds were consistent to wounds left from being stabbed by a knife, or strangled by a scarf.

[C] Arica Underwood never questioned the victim if the person who entered her apartment the night of the crime did in fact have a beard as the person the victim identified in court in a picture did not have a beard and at the time of the crime and at the trial Harry Bailey did in fact have a beard.

>[D] Arica Underwood never questioned why the victim had been questioned by investigators that were not trained to question someone with the mental capacity of an 8-10 year old child as was to be determined to be the case by witness Holly Mott.
>
>[E] Arica Underwood never questioned the victim's ability to stand trial.
>
>[F] Arica Underwood never objected to the prosecutor telling the jury that the blood from the crimes scene was the victim's blood and this could not be known as fact because none of the blood had been tested for DNA.
>
>[G] Arica Underwood never sought out medical records of the victim's wounds.
>
>[H] Arica Underwood allowed Harry Bailey the defendant's paycheck stubs to be entered as evidence but then failed to argue that the paycheck stubs were evidence to refute any motive of the defendant committing this crime as a means to financial gain.
>
>**GROUND FIVE:** Errors in investigation of the crime scene.

(Petition, ECF No. 3.)

# ANALYSIS

**Ground One:  Admission of Hearsay Evidence**

In his First Ground for Relief, Bailey claims he did not receive a fair and impartial trial because the trial judge admitted hearsay evidence.

The Warden claims this ground for relief is barred by Bailey's procedural default in failing to object to the hearsay at trial.  Bailey raised this claim as his first assignment of error on direct appeal to the First District Court of Appeals which decided the claim as follows:

3

**[\*P30]** Bailey's first assignment of error involves the testimony by Lewis, Mott, Officer Johnson, and Detective Williams about what Miller told them concerning the attack, and testimony by Mott, Officer Johnson and Detective Williams about what Lewis said his daughter had told him concerning her attack. Bailey argues that these statements were inadmissible hearsay, and that they were improperly used to bolster Miller's testimony at trial identifying him as her assailant. But Bailey acknowledges that defense counsel failed to object to the admission of this testimony.

**[\*P31]** Bailey contends that even though defense counsel did not object to the admission of this testimony, the evidence should be deemed inadmissible under the plain-error doctrine. See Crim. R. 52(B). Plain error is an error so extreme that it affected the outcome of the proceedings and must be corrected to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraphs two and three of the syllabus.

**[\*P32]** Excited-utterance exception. The state first argues that some of the statements were not hearsay because they were excited utterances. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

**[\*P33]** We agree with the state that Miller's first statements to her father concerning the attack were made under the stress of excitement caused by the attack, which could only be described as startling. It is not clear from the record exactly how much time had lapsed after the attack before Lewis first spoke to his daughter in her blood strewn and ransacked apartment. But it was within several hours of the attack, and it was clear that Miller, who was in significant pain, in a daze and about to faint, was still under the stress of the particularly brutal and terrifying attack when she made her excited utterances to Lewis. Moreover, we do not find that Lewis's general question of "what happened?" to his daughter upon seeing the crime scene was a "coercive" or "leading" type of questioning such that it " 'destroy[ed] the domination of the nervous excitement over [Miller's] reflective faculties.' " See *State v. Jones,* 135 Ohio St.3d 10, 2012–Ohio–5677, 984 N.E.2d 948, ¶ 170, quoting *State v. Wallace,* 37 Ohio St.3d 87, 90–91, 524 N.E.2d 466 (1988), paragraph two of the syllabus. Instead, it facilitated Miller's expression of her thoughts. Id.

**[\*P34]** Thus, Miller's first statements to her father describing her physical attack and theft, and identifying her "neighbor" as her

4

assailant, were admissible as excited utterances under Evid.R. 803(2) and were, therefore, properly admitted into evidence.

**[\*P35]** Deliberate failure to object as a legitimate trial strategy. But not all of the challenged statements would have qualified as excited utterances. Nonetheless, the state argues, and we agree, that Bailey cannot demonstrate plain error. Plain error may not be invoked to exclude allegedly prejudicial hearsay testimony to which defense counsel did not object when the record demonstrates that counsel's failure to object was deliberate and in furtherance of legitimate trial tactics. See *State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351 (1976), paragraph three of the syllabus.

**[\*P36]** Bailey primarily takes issue with statements involving Miller's identification of him as her assailant. By allowing this evidence at trial, defense counsel could argue that Miller was led to believe that Bailey had attacked her by those who had conversations with her, beginning with her conversation with her father. Defense counsel was more concerned with what Miller did not say during her conversations with her father and the other state's witnesses because she did not name Bailey.

**[\*P37]** As her father testified, Miller had identified her attacker only as her "neighbor." But Officer Johnson testified that Lewis had told him that his daughter had said that it was the "next door neighbor." Officer Johnson then showed Miller the photograph of only one person—Harry Bailey, and presumably that is when she learned his name. On cross-examination, Mott testified that Miller could be easily led if not interviewed according to the methods for which Mott had received special training. Therefore, Bailey argued that Miller's testimony at trial unequivocally naming "Harry Bailey" as her attacker was unreliable.

**[\*P38]** This trial strategy was evident in voir dire when defense counsel asked the potential jurors, "Have you ever known someone who had a passionate belief that something, some event or something happened a certain way, maybe concerning their child, but then it turned out they were wrong?" The strategy became more evident during closing argument when defense counsel argued that Miller was misled into identifying Bailey as the perpetrator. To that end, defense counsel argued that the police did not properly interrogate Miller about what happened and improperly showed her only Bailey's photograph. Defense counsel contended that "everyone jumped to the conclusion that it was [Bailey]" and that Miller consistently mentioned his name because she had "been told that name repeatedly for the last six months."

5

> **[\*P39]** The record further demonstrates that defense counsel objected to other hearsay evidence. Relevant here, as soon as the hearsay testimony moved from identifying Bailey and to an explanation of his motive, defense counsel objected. Thus, the failure to object appears to have been deliberate and in furtherance of a legitimate trial strategy to expose a significant weakness in the state's case.
>
> **[\*P40]** Because defense counsel deliberately failed to object to this testimony as a legitimate trial tactic, Bailey may not invoke the plain-error doctrine to exclude this allegedly prejudicial but unobjected to testimony. Accordingly, we overrule the first assignment of error.

*State v. Bailey*, 2015-Ohio-2997 (1st Dist. July 29, 2015).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; *accord, Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Applying the *Maupin* test to this case, the Court finds that Ohio does indeed have an applicable procedural rule, the contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The First District

Court of Appeals enforced that rule here when it reviewed the first assignment of error for plain error. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Furthermore, the Sixth Circuit has repeatedly held that this rule is an adequate and independent state ground of decision. *Wogenstahl*, 668 F.3d at 334 , *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982); *See also Seymour*, 224 F.3d at 557; *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

Under the fourth prong of the *Maupin* test, a petitioner can excuse a procedural default by showing it was caused by the ineffective assistance of trial counsel. Bailey made that claim on direct appeal and the First District decided the decision not to object was deliberate on the part of trial counsel and therefore not ineffective assistance of trial counsel. A state court's decision on a claim of ineffective assistance of trial counsel is entitled to deference by a federal court reviewing the claim in habeas corpus. *Harrington v. Richter*, 562 U.S. 86 (2011).

Therefore the First Ground for Relief should be dismissed as procedurally defaulted.

8

**Ground Two:  Trial Court Error in Allowing Prosecutorial Misconduct**

In his Second Ground for Relief, Petitioner asserts he was denied a fair trial by misconduct of the prosecutor which the trial judge did not prevent.

The first asserted misconduct is that the prosecutor claimed Bailey's DNA was on the scarf allegedly used to strangle the victim.  Respondent asserts this claim is procedurally defaulted because it was never presented to the Ohio courts and Bailey makes no reply.  The Warden's defense is well taken:  a claim cannot be omitted from direct appeal and then raised for the first time in habeas corpus.

The second asserted misconduct is the admission in evidence of a piece of duct tape not found at the crime scene.  The Warden objects that this claim was not raised on direct appeal and Bailey makes no response.  Even if it is true that the duct tape was found somewhere besides the crime scene, that does not make it inadmissible so long as the State proves a connection with the crime.  In any event a ruling on the admissibility of evidence does not rise to the level of a constitution violation.

Ground Two should be dismissed.

**Ground Three:  Prosecutorial Misconduct**

As with Ground Two, Bailey asserts two instances of alleged prosecutorial misconduct in Ground Three.  The Warden objects that this Ground for Relief is procedurally defaulted because it was never presented to the Ohio courts, and Bailey makes no reply.  As noted above

with respect to Ground Two(A), a claim cannot be raised for the first time in a habeas petition after it has not been presented to the state courts. Ground Three should therefore be dismissed.

**Ground Four:  Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Bailey asserts eight separate instances of alleged ineffective assistance of trial counsel, Subclaims A through H. The Warden asserts that Bailey never presented any of these sub-claims except for Subclaim F to the Ohio courts and Bailey makes no reply.

The Warden concedes that Subclaim F was presented to the First District Court of Appeals when Bailey argued that his trial attorney should have objected to the prosecutor's comments that the blood at the crime scene was the victim's blood because it had never been tested for DNA.

The First District decided this claim on the merits, holding:

> **[\*P47]** In his third assignment of error, Bailey argues that he was denied the effective assistance of trial counsel in violation of his constitutional rights. He contends that this ineffectiveness was demonstrated by counsel's failure to object to the prosecutor's allegedly improper comments during closing argument, to object to the admission of Miller's hearsay statements, and to move to suppress Miller's out-of-court identification of Bailey as her assailant.
>
> **[\*P48]** To prevail on his claim of ineffective assistance of trial counsel, Bailey must show that trial counsel's performance was deficient and that this deficient performance prejudiced his defense such that he was denied a fair trial. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1985), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> **[\*P49]** Counsel's performance was not deficient. In our discussion of Bailey's second assignment of error, we found no merit to

> Bailey's claim that the prosecutor's remarks during closing argument were improper. Thus, trial counsel was not ineffective for failing to object to the challenged remarks.
>
> * * *
>
> **[*P53]** In sum, Bailey has failed to demonstrate that he was denied the effective assistance of trial counsel. Accordingly, we overrule the third assignment of error.

*State v. Bailey, supra*. The First District applied the correct standard embodied in *Strickland, supra*. Basically, if the prosecutor's comments were not improper, it cannot have been ineffective assistance of trial counsel to fail to object to them. This Court independently finds no misconduct in the prosecutor's comments. The Constitution does not demand that the source of human blood in an apartment occupied by one person be proven by DNA evidence to have been that person's blood following an attack. The contrary would mean there could never have been a constitutional identification of blood before DNA typing was invented.

Ground Four should therefore be dismissed.

**Ground Five: Errors in Investigation of the Crime Scene**

The Warden asserts this claim is procedurally defaulted because it was never presented to the Ohio courts and Bailey makes no response. The Constitution of the United States does not erect some standard by which crime scenes must be investigated. Ground Five should be dismissed as procedurally defaulted.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 6, 2016.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).